Filed 3/3/22  P. v. Marroquin CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| THE PEOPLE, | B309736 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA009519) |
| v. | |
| RUDY MARROQUIN, JR., | |
| Defendant and Appellant. | |


APPEAL from an order of the Los Angeles Superior Court, Rogelio G. Delgado, Judge. Reversed and remanded.

Derek K. Kowata, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Daniel C. Chang and Nicholas J. Webster, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Rudy Marroquin, Jr. (defendant) argues that the trial court erred in summarily denying his petition for resentencing on his second degree murder conviction under Penal Code section 1170.95.[1]  We agree that the summary denial was inappropriate, and remand for an evidentiary hearing on that conviction.

## FACTS AND PROCEDURAL BACKGROUND

### I.    Facts

In August 1991, defendant belonged to the Bassett Grande street gang.  One day that month, defendant and two other gang members drove to a part of El Monte also claimed by the Puente street gang.  They saw Vincent Anthony Portillo (Portillo).  They confronted Portillo, asking him, "Where are you from?"  When Portillo answered "Puente" and ran away, defendant and Ernie Hernandez (Hernandez) gave chase.  After a brief tussle in a nearby backyard, defendant pulled Portillo back into the street. Once there, defendant held Portillo while Hernandez struck Portillo in the head twice with a bumper jack.  After Portillo collapsed to the ground, Hernandez proceeded to pound Portillo's skull eight more times with the jack.  Then they drove away.  The blood that splattered their clothing, their car, and the bumper jack all belonged to Portillo.  When defendant was arrested soon thereafter, he bragged to a fellow inmate that "we really fucked

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

some dudes up." (*People v. Marroquin* (July 27, 1994, B073463) [nonpub. opn.], at pp. 8-9.)

## II.    Procedural Background

### A.    *Underlying conviction, sentence, and appeal*

The People charged defendant and Hernandez with murder (§ 187, subd. (a)).  The People also alleged that defendant and Hernandez each "personally used a deadly and dangerous weapon" (the bumper jack) (§ 12022, subd. (b)), and that the murder was "committed for the benefit of, at the direction of, or in association with a criminal street gang" (§ 186.22, subd. (b)(1) & (2)).[2]

The matter went to trial in October 1992.  On this count, the jury was instructed that it could convict defendant if it found that he (1) committed the act constituting the murder himself, or (2) directly "aid[ed] and abet[ted]" the actual perpetrator.  On the

---

[2]    In the same charging document, the People also charged defendant and Hernandez with three crimes arising out of a second, gang-related shooting—namely, (1) murder (§ 187, subd. (a)), (2) attempted murder (§§ 187, 664), and (3) unlawful discharge of a firearm at an inhabited dwelling house (§ 246).  As to the murder, the People also alleged a "multiple murder" special circumstance as to both defendants (§ 190.2, subd. (a)(3)); as to the murder and attempted murder, the People also alleged both defendants personally used a firearm (§ 12022.5, subd. (a)); as to all three counts, the People also alleged that the crimes were committed for the benefit of, at the direction of, or in association with a criminal street gang (§ 186.22, subd. (b)(1) & (2)).  The jury convicted defendant and Hernandez of these crimes and found true the allegations; those convictions were affirmed on appeal, but the sentences modified to life without the possibility of parole plus 4 years on the murder, and 12 years and 8 months on the remaining two counts.

direct-aiding-and-abetting theory, the jury was instructed that it could convict defendant only if he aided and abetted "the commission of *a crime*" "with knowledge of the unlawful purpose of the perpetrator" and "with the intent or purpose of committing, encouraging, or facilitating the commission of *the crime*." (Italics added.) The instructions did not define "the crime."

During closing argument, the prosecutor argued that defendant could be guilty of murder as "an aider and abettor." He went on to argue that "the persons who commit crimes and those who aid and abet them are guilty not only for the crime that they intend to do but . . . for the natural and probable consequences of what is done." He concluded by arguing that defendant and Hernandez "both intended to commit *the crime*" of "attack[ing] Portillo" and that "the natural and probable consequence[] of that attack, of [that] gang attack, is death, and they knew it."

The jury convicted defendant of second degree murder, found true the allegation that Hernandez had personally used the bumper jack, found *not true* the allegation that defendant had personally used the bumper jack, and found the gang allegation true as to both defendants.

We affirmed the conviction on appeal, but modified the sentence to 15 years to life.

**B.    *Petition for resentencing***

In July 2020, defendant filed a form petition to vacate his second degree murder conviction under section 1170.95. After appointing counsel, but before permitting any further briefing or holding a hearing, the trial court "summarily denied" the petition. Specifically, the court found that, based on the preliminary hearing transcript, "the People c[ould] prove

4

[implied] malice" necessary to support the second degree murder conviction because "defendant held the victim while [Hernandez] hit the victim over the head with a tire jack ultimately causing the death of the victim."

Defendant filed this timely appeal.

## DISCUSSION

Defendant argues that the trial court erred in summarily denying his section 1170.95 petition. Because our consideration of this argument involves questions of law and the application of that law to undisputed facts, our review is de novo. (*Tsasu LLC v. U.S Bank Trust, N.A.* (2021) 62 Cal.App.5th 704, 715.)

A person is entitled to relief under section 1170.95 if, as relevant here, (1) "[a] complaint, information, or indictment was filed against [him] that allowed the prosecution to proceed under a theory of felony murder[ or] murder under the natural and probable consequences doctrine," (2) he "was convicted of murder," and (3) he "could not presently be convicted of murder . . . because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a).) In January 2019, our Legislature amended section 188 to provide that "in order to be convicted of murder, a principal in a crime shall act with malice aforethought" and that "[m]alice shall not be imputed to a person based solely on his . . . participation in a crime." (§ 188, subd. (a)(3).) Our Legislature's purpose was to ensure that "[a] person's culpability for murder [is] premised upon that person's own actions and subjective mens rea." (Stats. 2018, ch. 1015, § 1(g).)

As a threshold matter, we conclude that the trial court erred in summarily denying defendant's petition. In *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*), our Supreme Court held that if a defendant files a facially compliant petition and requests

5

the appointment of counsel, the trial court must appoint counsel and entertain further briefing regardless of whether the record of conviction unequivocally demonstrates that the defendant is not entitled to relief. (*Id.* at p. 963.) Here, defendant's petition was facially compliant and he requested counsel. Although the trial court appointed counsel, it did not permit further briefing. Thus, *Lewis* dictates the conclusion that the trial court erred in summarily denying defendant's petition.

This error was also prejudicial. To be sure, we may conclude that the summary denial of a section 1170.95 petition is harmless if relief under section 1170.95 was foreclosed as a matter of law because the jury's verdict necessarily rests on a still-valid theory of liability for murder. (*Lewis*, *supra*, 11 Cal.5th at pp. 971, 974.) But we are unable to conclude that the jury's verdict in this case rested on a still valid theory of liability. We know, from the jury's findings that Hernandez personally used the bumper jack and that defendant *did not*, that the jury necessarily found Hernandez to be the actual perpetrator of Portillo's murder and defendant to be an aider and abettor.

Thus, the question becomes: Can we conclude, as matter of law, that the jury necessarily found that defendant was a *direct* aider and abettor (which is a still-valid theory of murder liability)? We cannot. In terms of the jury instructions, the jury was instructed solely on direct aiding and abetting, and was *not* specifically instructed on the theory that defendant aided and abetted a lesser crime (such as assault) whose natural and probable consequence was murder. However, the direct aiding and abetting instruction did not spell out *which crime* it is that defendant needed to aid and abet; it referred only to the "crime" generically. The prosecutor—with the trial court's blessing—

6

availed himself of that ambiguity by arguing in closing that defendant aided and abetted *the underlying assault of Portillo*, the natural and probable consequence of which was murder. Because a person found guilty of murder under a natural and probable consequences theory need only intend to aid some lesser crime, such a person can be liable for murder even when their malice is imputed; as a consequence, the natural and probable consequences theory is no longer valid to support a murder conviction. (§§ 188, 189, subds. (e), (f), 1170.95.) Although a prosecutor's argument cannot add brand new theories of liability to the jury instructions (and thereby call into question the basis for a jury's verdict), the direct aiding and abetting instruction in this case was sufficiently open ended that it was "reasonably susceptible to the prosecutor's argument" (e.g., *People v. Medellin* (2020) 45 Cal.App.5th 519, 533), and thereby functioned to present this theory to the jury for its consideration (see, e.g., *People v. Morgan* (2007) 42 Cal.4th 593, 611-613 [prosecutor's argument, if within the ambit of the instructions, can inject a second, invalid theory of liability]). Because the jury's general verdict did not require the jury to specify the specific theory of liability it selected, we cannot determine as a matter of law that defendant's second degree murder conviction rests on a still-valid theory of liability.

The People resist this conclusion with what boil down to two arguments.

First, the People assert that the natural and probable consequences theory was *not* presented to the jury because the specific instruction for that theory was never given; because the jury was specifically instructed to "follow [the] instructions" over "anything" "conflict[ing]" "concerning the law said by the

7

attorneys in their arguments"; and because we presume that jurors follow the instructions (e.g., *People v. Holt* (1997) 15 Cal.4th 619, 662). This assertion might have carried the day if the direct aiding and abetting instruction that *was* given in this case had "conflicted" with the prosecutor's argument, but it did not: Instead, the instruction referred to directly aiding and abetting a "crime," but did not spell out whether that crime had to be *the murder* or instead some lesser crime (like assault) of which murder was a natural and probable consequence. It is this very uncertainty that renders the direct aiding and abetting argument susceptible to—and hence consistent with—the prosecutor's argument. Indeed, the trial court *and even Hernandez's counsel* agreed that the prosecutor was free to argue the natural and probable consequences theory under the instructions ultimately given. The People also seem to suggest that the prosecutor's mention of "natural and probable consequences" was in relation to the "implied malice" instruction, and hence did not *really* put the natural and probable consequences theory before the jury. We reject this suggestion, as it ignores the prosecutor's own words: That defendant aided and abetted Hernandez's "attack" on Portillo, and that "the natural and probable consequence of that attack, of [that] gang attack, is death . . . ."

Thus, the facts of this case are unlike the facts in *People v. Cortes* (Feb. 15, 2022, B312185) __ Cal.App.5th __ [2022 Cal.App. Lexis 117] (*Cortes*). In *Cortes*, the court rejected the argument that the prosecutor's one-time reference to "natural and probable consequences" put the natural and probable consequences theory of murder liability before the jury where there was no jury instruction on that theory. In *Cortes*, the prosecutor "did not

8

argue at any point during the trial, including closing argument, that a crime other than murder . . . was committed" and did not name any predicate crime such as "assault with a deadly weapon." (*Id.* at \*12.) Here, the prosecutor specifically and repeatedly urged that the "crime" of "gang attack" on Portillo was committed, and that defendant was liable for murder as a natural and probable consequence of that lesser crime.

Second, the People contend that the direct aiding and abetting instruction is not consistent with a natural and probable consequences theory because that instruction did not spell out the "target" crime (that is, the lesser crime that defendant would need to aid and abet and whose natural and probable consequence would be murder). Although our Supreme Court in *People v. Prettyman* (1996) 14 Cal.4th 248, 264-267 (*Prettyman*) established the requirement that a natural and probable consequences instruction specify the target crime, *Prettyman* did not do so until 1996—which is four years *after* the trial in this case. At the time of this trial, even the pattern CALJIC jury instruction did not require the target crime to be specified. As a result, the absence of a target crime in the instruction was of no consequence at the time this case was tried.

For these reasons, the trial court erred in summarily denying defendant's section 1170.95 petition. Our conclusion that defendant's claim is not foreclosed as a matter of law is meant to express no opinion on the underlying merits of defendant's petition—that is, whether the trial court after an evidentiary hearing may independently find that the People have proven beyond a reasonable doubt that defendant directly aided and abetted Hernandez by holding Portillo while Hernandez repeatedly beat him in the head with the bumper jack.

9

## DISPOSITION

The order is reversed and remanded for an evidentiary hearing.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT


We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.
CHAVEZ